**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| **VIVIENNE MACMAHON, Individually and on Behalf of All Others Similarly Situated,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 1:25-cv-02019** |
| **STRIDE, INC., JAMES J. RHYU, and DONNA M. BLACKMAN,** | **CLASS ACTION** |
| | **DEMAND FOR JURY TRIAL** |
| **Defendants.** | |

**COMPLAINT FOR VIOLATIONS OF THE**
**FEDERAL SECURITIES LAWS**

Vivienne MacMahon ("Plaintiff"), individually and on behalf of all others similarly situated (the "Class") and by and through her attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, her counsel's investigation, which includes, without limitation: (a) review and analysis of regulatory filings made by Stride, Inc. ("Stride" or the "Company") with the U.S. Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases, conference calls, and media reports issued by and disseminated by Stride; and (c) review of other publicly available information concerning Stride.

## NATURE OF THE ACTION AND OVERVIEW

1.     This is a federal securities class action on behalf of all persons and entities that purchased or otherwise acquired Stride securities between October 22, 2024 and October 28, 2025, inclusive (the "Class Period"), against Stride and certain of its officers and executives, seeking to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5 promulgated thereunder.

2.     Stride is a Reston, Virginia-based technology company that provides an educational platform to deliver online learning to students throughout the U.S. Throughout the Class Period, Stride told the market that it was "one of the nation's most successful technology-based education companies" and that its "[d]eep educational, regulatory, and policy expertise" across the United States allowed it to "leverage[e] capabilities and assets to address market failures or shortcomings."

3.     The foregoing were false and misleading statements because Stride was: (1) inflating enrollment numbers; (2) cutting staff costs beyond required statutory limits; (3) ignoring compliance requirements; and (4) losing existing and potential student enrollments.

1

4.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

5.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

6.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. §78aa).

7.      Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(b),  Section 27 of the Exchange Act (15 U.S.C. §78aa), and Local Rule 3(B).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.  In addition, the Company is headquartered in this Judicial District.

8.      In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the U.S. mail, interstate telephone and wire communications, and the facilities of a national securities exchange.

## PARTIES

9.      Plaintiff Vivienne MacMahon, as set forth in the accompanying certification and incorporated by reference herein, purchased Stride securities during the Class Period and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

2

10.     Defendant Stride is a Reston, Virginia-based global payments and financial technology provider.  Stride's common stock trades on the New York Stock Exchange ("NYSE") under the ticker "LRN."

11.     Defendant James J. Rhyu ("Rhyu") has served as the Company's Chief Executive Officer ("CEO") and a member of its Board of Directors since January 2021.

12.     Defendant Donna M. Blackman ("Blackman") has served as the Company's Chief Financial Officer ("CFO") since July 2022.

13.     Defendants Rhyu and Blackman (together, the "Individual Defendants" and together with the Company, "Defendants") because of their positions with Stride, possessed the power and authority to control the contents of, among other things, Stride's earnings conference calls.  The Individual Defendants were provided with copies of Stride's press releases alleged herein to be misleading prior to, or shortly after, their issuance, and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions with the Company, and their access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false and misleading statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

14.     Stride is a Reston, Virginia-based technology company that provides an educational platform to deliver online learning to students throughout the U.S.  The Company's platform hosts products and services to enroll.  The Company's clients are primarily public and private schools, school districts, and charter boards.  Additionally, it provides solutions to employers, government

3

agencies, and consumers.  These products and services are provided through two lines of revenue: General Education and Career Learning.

15.     According to Stride, General Education products and services are predominantly focused on core subjects, including math, English, science and history, for kindergarten through 12th grade students to help build a common foundation of knowledge.  Career Learning products and services are focused on developing skills to enter and succeed in careers in high-growth, in-demand industries—including information technology, healthcare, and general business.

16.     Throughout the Class Period, Stride represented to investors that "[t]hese products and services, spanning curriculum, systems, instruction, and support services are designed to help learners of all ages reach their full potential through inspired teaching and personalized learning."

17.     Unbeknownst to investors, during the Class Period, Stride was: 1) inflating enrollment numbers by retaining "ghost students"; (2) cutting staffing costs by assigning teachers' caseloads far beyond the required statutory limits; (3) ignoring compliance requirements, including background checks and licensure laws for its employees, and ignoring federally mandated special education services to students; (4) suppressing whistleblowers who documented financial directives from Stride's leadership to delay hiring and deny services to preserve profit margins; and (5) losing existing and potential enrollments.

## FALSE AND MISLEADING STATEMENTS

18.     On October 22, 2024, the Company announced its Q1 2025 earnings results.  On the earnings call, Defendant Rhyu stated: "We believe we can deliver meaningful products and services to millions of students and customers each year with the range of initiatives that we are currently in development."

19.     Defendant Blackman added that "[f]amilies continue to seek out educational opportunities and Stride is filling a need in the market for virtual options" and that:

For the second quarter of fiscal year 2025, we are forecasting revenue in the range of $560 million to $580 million, adjusted operating income between $115 million and $125 million, and capital expenditures between $13 million and $15 million. For the full year, we expect revenue in the range of $2.225 billion to $2.3 billion; adjusted operating income between $395 million and $425 million; capital expenditures between $60 million and $65 million and an effective tax rate between 24% and 26%.

20.    On January 28, 2025, Stride announced its Q2 2025 earnings results.  On the earnings call, Defendant Rhyu told investors that "for three consecutive years now, we have seen increasing growth in our business. And also for three consecutive years, we see continued in-year strength in demand. The macro environment for our business is as strong as ever. And as long as we can continue to execute effectively, I believe we can benefit from these conditions."

21.    On April 29, 2025, Stride announced its Q3 2025 earnings results.  On the earnings call, Defendant Blackman stated that:

Given the continued strength of in-year enrollments and the margin improvements, we are raising of our full year revenue and AOI guidance, and we now expect revenue in the range of $2.370 billion to $2.385 billion, up from $2.320 billion to $2.355 billion last quarter. Adjusted operating income between $455 million and $465 million, up from $430 million and $450 million last quarter.

22.    On August 5, 2025, Stride announced its Q4 2025 earnings results.  On the earnings call, Defendant Rhyu stated that:

The good news is that macro trends around our core business continue to be positive. Demand for school choice is growing, and our customers and potential customers continue to choose us in record numbers. Given where we are, less than 50% through our anticipated enrollment season, we can already see if current trends continue that we will once again achieve double-digit enrollment growth this fall. And we are continuing to invest in new products and services. This will both benefit our core business but also give us new market opportunities to pursue. For example, over the past year, our tutoring business hosted over 100,000 sessions. In this upcoming school year, we are going to offer dedicated tutoring for all second and third graders focused on the core skill of reading.

23.    On the same earnings call, Defendant Blackman stated that:

5

This year was another record year for Stride with continued strong revenue and profitability growth. And while it's still early in the enrollment season, given that historically August and September are our busiest months, we are on track for another year of strong growth in FY '26. And as we've done in the past, we'll wait until the first quarter earnings to provide formal enrollment guidance. However, I'd like to add a little color to the comments James made about our anticipated enrollment growth for the first quarter.

Based on our latest data, we expect year-over-year enrollment growth to be in the range of 10% to 15% in the first quarter. It's still early in August, and we will need to continue to execute against what we believe is a strong market trend. A few additional notes for FY '26. Seasonality for next year should be in line with FY '25. SG&A as a percent of revenue should continue to decrease marginally, while CapEx as a percent of revenue is anticipated to be relatively flat. Stock-based compensation will increase slightly from this year, and interest expense and the tax rate should be in line with FY '25.

24.    When asked about the termination by Gallup-McKinley County Schools,

Defendant Rhyu responded:

So let me try to unpack this here a little bit. When we encountered the difficulties with the Gallup-McKinley school district, we were uncertain about how those families were going to be able to continue in a program and -- period. Like we just -- we didn't have enough information sort of broadly whether it was going to be ours or theirs or whatever. And so we made a decision to offer those families a spot in a comparable private academy in New Mexico. And our view of it was that we were going to invest in those families irrespective of sort of whatever contractual outcome happened because it was important to us to make sure that we protected those families.

Our team did an amazing job in securing these contracts. And so those families now have, I'll say, a more secure home, if you will, in a similar environment, if you will, that they were previously in. But we did make an offer, and that would have been an investment on our part for these families. It also, by the way, ensured teachers that we employed in New Mexico were able to retain their jobs, which was also important to us, which we also made that decision at potentially investment on our part. Now it's all worked out. But we made that decision before we knew it was going to work out because it was the right thing to do for the families and for the teachers in that state. And we stood by them, and I think they're now standing by us.

But it was dicey. It was difficult. We were not sure that we were going to secure a new set of agreements. Shout out to the districts that signed up with us. I think they worked very quickly and diligently as well. So thank you to them. And I think we've all got the same goals in mind here, which is to ensure seamless education

6

opportunities for those families. And that's -- we've been able to come together and provide that. And we're very grateful for that opportunity to serve those families.

25.    When asked if Stride could fill in the enrollment loss, Defendant Rhyu stated that:

We anticipate no hole to fill. And yes, you have the numbers directionally right. It would have been something probably less than 2% of the total that we would have, in theory, had at risk. But we feel pretty confident that New Mexico is a really strong demand state. We see a lot of demand in that state. We think we're going to continue to perform very well in that state, and we think that the families have really recognized us as the premier operator in that state.

26.    Defendant Blackman further added that "[b]ased on our latest data, we expect year-over-year enrollment growth to be in the range of 10% to 15% in the first quarter."

27.    On October 28, 2025, on an earnings call for Q1 2026, Defendant Rhyu announced that Stride experienced "approximately 10,000 to 15,000 fewer enrollments" than it expected. He explained that:

Demand for our products and services remain strong. In fact, we believe industry demand and trends around online education continue to grow. We indicated in August that we believe we would grow enrollment between 10% to 15%. And while we achieved enrollment growth in that range, we still fell short of our internal expectations. While demand as indicated by application volumes remains healthy, overall growth was tempered. Well, what happened? Well, we made a couple of strategic decisions that we believe will pay dividends over the longer term, but limited our growth in the short term.

First, we invested in upgrading our learning and technology platforms with third-party industry-leading platforms. We continue to believe the investment is the right long-term decision to ensure we are deploying industry-leading technologies and systems. However, the implementations did not go as smoothly as we anticipated. We are actively engaged with our vendors to improve the situation. We heard from our customers that their engagement with these platforms detracted from their overall experience. This poor customer experience has resulted in some higher withdrawal rates and lower conversion rates than we expected.

Secondly, we wanted to focus on running high-quality programs. And in some instances, the best approach to achieve that is to limit enrollment growth while we improve our execution. We estimate that the combination of these factors resulted in approximately 10,000 to 15,000 fewer enrollments than we otherwise could have achieved. We also believe that these challenges will likely restrict our in-year enrollment growth. While demand continues to remain strong, we do not anticipate

the same in-year enrollment increases that we have seen over the past few years. So our outlook for this year compared to last year is a bit muted. However, our outlook for this business over the longer term remains bullish, and these investments should help us achieve our longer-term goals.

28.    Defendant Blackman added on the same earnings call that:

With did not give guidance for the full year. We gave the guidance that we gave for the count date was 10% to 15% for the count date, we came in at 11.3%. But we do not anticipate that we will see the same level of in-year enrollment growth that we've seen over the past three years. So based upon that assumption, the 11.3% growth that we saw from October to October, we don't expect to see that same year-over-year increase by the end of the year.

29.    The foregoing statements were materially false and misleading because Stride was: (1) inflating enrollment numbers by retaining "ghost students"; (2) cutting staffing costs by assigning teachers' caseloads far beyond the required statutory limits; (3) ignoring compliance requirements, including background checks and licensure laws for its employees, and ignoring federally mandated special education services to students; (4) suppressing whistleblowers who documented financial directives from Stride's leadership to delay hiring and deny services to preserve profit margins; and (5) losing existing and potential enrollments.

## THE TRUTH EMERGES

30.    On September 14, 2025, a report stated that the Gallup-McKinley County Schools Board of Education had filed a complaint against Stride, alleging fraud, deceptive trade practices, systemic violations of law, and intentional and tortious misconduct, including inflating enrollment numbers by retaining "ghost students" on rolls to secure state funding per student and ignoring compliance requirements, including background checks and licensure laws for its employees.

31.    On this news, the price of Stride's stock fell $18.60 per share, or 11.7%, to close at $139.76 per share on September 15, 2025.

32.    On October 28, 2025, the Company announced that "poor customer experience" had resulted in "higher withdrawal rates," "lower conversion rates," and had driven students away.

Stride estimated the impact caused approximately 10,000-15,000 fewer enrollments and stated that, because of this, its outlook is "muted" compared to prior years.

33.    On this news, the price of Stride's stock dropped $83.48 per share, or more than 54%, to close at $70.05 per share on October 29, 2025.

## CLASS ACTION ALLEGATIONS

34.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Stride securities between October 22, 2024 and October 28, 2025, inclusive, and who were damaged thereby.  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

35.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, millions of Stride's common shares traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Stride or its transfer agent, and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

36.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

37.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

38.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' actions as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Stride; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

39.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

40.     The market for Stride's securities was open, well-developed, and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Stride's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class, relying upon the integrity of the market price of the Company's securities and market information relating to Stride, purchased Stride securities, and have been damaged thereby.

41.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Stride's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Stride's business, operations, and prospects as alleged herein.

42.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Stride's financial well-being and prospects.  These material misstatements and/or omissions had the effect of creating, in the market, an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## **LOSS CAUSATION**

43.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

44.     During the Class Period, Plaintiff and the Class purchased Stride's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information

alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

45.     As alleged herein, Defendants acted with scienter since Defendants: (i) knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; (ii) knew that such statements or documents would be issued or disseminated to the investing public; and (iii) knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Stride, their control over, and/or receipt and/or modification of Stride's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Stride, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

46.     The market for Stride's securities was open, well-developed, and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Stride's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased the Company's securities relying upon the integrity of the market price of Stride's securities and market information relating to Stride, and have been damaged thereby.

47.     During the Class Period, the artificial inflation of Stride's securities was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the

Class Period, Defendants made or caused to be made materially false and/or misleading statements about Stride's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Stride and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company's securities. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

48.    At all relevant times, the market for Stride's securities was an efficient market for the following reasons, among others:

(a)    Stride's securities met the requirements for listing, and were listed and actively traded on the NYSE, a highly efficient and automated market;

(b)    as a regulated issuer, Stride filed periodic public reports with the SEC;

(c)    Stride regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)    Stride was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

49.    As a result of the foregoing, the market for Stride's securities promptly digested current information regarding Stride from all publicly available sources and reflected such

information in Stride's securities price.  Under these circumstances, all purchasers of Stride's securities during the Class Period suffered similar injury through their purchases of Stride's securities at artificially inflated prices and a presumption of reliance applies.

50.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class' claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

51.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.  In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker

14

had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Stride who knew that the statement was false when made.

**COUNT I**
**Violation of Section 10(b) of the Exchange Act and**
**Rule 10b-5 Promulgated Thereunder**
**Against All Defendants**

52.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

53.    During the Class Period, Defendants carried out a plan, scheme, and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Stride's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan, and course of conduct, Defendants, and each defendant, took the actions set forth herein.

54.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Stride's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein, or as controlling persons as alleged below.

55.    Defendants, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce and/or of the mails and wires, engaged and participated

15

in a continuous course of conduct to conceal adverse material information about Stride's financial well-being and prospects, as specified herein.

56.    Defendants employed devices, schemes, and artifices to defraud while in possession of material adverse nonpublic information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Stride's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Stride and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

57.    Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development, and reporting of the Company's internal budgets, plans, projections, and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports, and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

58.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.  Such material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Stride's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.   As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

59.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Stride's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trade, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class purchased Stride's securities during the Class Period at artificially high prices and were damaged thereby.

60.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that

Stride was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased their Stride securities, or, if they had purchased such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

61.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

62.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**COUNT II**
**Violation of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

63.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

64.     Individual Defendants acted as controlling persons of Stride within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

18

65.    In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

66.    As set forth above, Stride and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's Common stock during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment as follows:

A.    determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B.    awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.    awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.    such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED:  November 11, 2025.

**VIVIENNE MACMAHON**
By Counsel

*/s/ Roman Lifson*
Roman Lifson (VSB #43714)
David B. Lacy (VSB #71177)
Austin R. Palmore (VSB # 98339)
Christian & Barton, LLP
901 E. Cary Street St.
Suite 1800
Richmond, VA 23219
Tel.: (804) 697-4100
Fax: (804) 697-6112
rlifson@cblaw.com
dlacy@cblaw.com
apalmore@cblaw.com

Thomas L. Laughlin, IV (*pro hac vice* forthcoming)
Mandeep S. Minhas (*pro hac vice* forthcoming)
Scott + Scott Attorneys at Law LLP
The Helmsley Building
230 Park Avenue, 24th Floor
New York, NY 10169
Tel.: (212) 223-6444
Fax: (212) 223-6334
tlaughlin@scott-scott.com
mminhas@scott-scott.com

*Counsel for Plaintiff Vivienne MacMahon
and the Putative Class*