UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

VIVIENNE MACMAHON, Individually and
on Behalf of All Others Similarly Situated,
*Plaintiff,*

v.

STRIDE, INC., et al.,
*Defendants.*

No. 1:25-cv-2019-MSN-LRV

## ORDER

This matter comes before the Court on several competing motions to appoint lead plaintiff and counsel. ECF 13, 16, 19, 22, 24, 27, 33, 37. Upon consideration of all of the competing motions and for the reasons that follow, the Court will GRANT the motion of the Pension Funds (ECF 22), appoint them lead plaintiff, and approve their selection of counsel.

## I.    BACKGROUND

### A.    Factual Background

The Complaint alleges that Defendants, publicly-traded educational technology platform company Stride, Inc. and its CEO James Rhyu and CFO Donna Blackman, violated federal securities laws and defrauded investors. Plaintiffs allege that certain statements made by Defendants in their October 22, 2024, January 28, 2025, April 29, 2025, and August 5, 2025 earnings calls regarding growth expectations were materially false and misleading because Stride was "(1) inflating enrollment numbers by retaining 'ghost students'; (2) cutting staffing costs by assigning teachers' caseloads far beyond the required statutory limits; (3) ignoring compliance requirements, including background checks and licensure laws for its employees, and ignoring federally mandated special education services to students; (4) suppressing whistleblowers who

documented financial directives from Stride's leadership to delay hiring and deny services to preserve profit margins; and (5) losing existing and potential enrollments." ECF 1 ("Complaint") ¶¶ 17–29.

Specifically, while Defendants on their August 5, 2025 call addressed how Stride handled the termination of an agreement by Gallup-Mckinley County Schools and anticipated "no hole to fill" in terms of enrollment loss and ten to fifteen percent year over year growth in the coming first quarter, *Id*. ¶¶ 24–26, on September 14, 2025, reports broke that Gallup-McKinley County Schools sued Stride on allegations of "deceptive trade practices, systemic violations of law, and intentional and tortious misconduct, including inflating enrollment numbers by retaining "ghost students" on rolls to secure state funding per student and ignoring compliance requirements, including background checks and licensure laws for its employees." *Id*. ¶ 30. Upon this news, Stride's share price fell $18.60 or 11.7% to $139.76 on September 15, 2025. *Id*. ¶ 31. Additionally, on their October 28, 2025 earnings call, Defendants announced "approximately 10,000 to 15,000 fewer enrollments" than expected, as "poor customer experience" resulted in "higher withdrawal rates," "lower conversion rates," and a "muted" outlook compared to prior years. *Id*. ¶¶ 27, 28, 32. Upon this news, Stride's share price dropped $83.48, or more than 54%, to $70.05 on October 29, 2025. *Id*. ¶ 33. Plaintiffs allege that they suffered damages from their purchases and sales of Stride's securities during the class period (October 22, 2024 to October 28, 2025) as a result of these false and misleading statements or omissions. *Id*. ¶¶ 62, 66.

### B.    Procedural Background

Plaintiff Vivienne MacMahon filed a class action complaint on November 11, 2025 for the class period of October 22, 2024, to October 28, 2025. ECF 1 ¶ 1. The same day, in compliance with the Private Securities Litigation Reform Act of 1995 ("PSLRA"), MacMahon's counsel Scott + Scott published notice of this suit in *Global Newswire*. ECF 29 at 1; ECF 29-1. The notice

reported the Complaint's proposed class period, the subject matter of the class action; and a January 12, 2026 deadline to move for appointment of lead plaintiff. ECF 29-1.

Several timely motions for appointment of lead plaintiff and counsel were received. ECF 13, 16, 19, 22, 24, 27, 33, 37. Of them, the motion by Xiang Li has been withdrawn (ECF 56), and William Clark, Richard Butler, the City of New Orleans Employees' Retirement System and Laborers' District Council Construction Industry Pension Fund, and the Employees' Retirement System of the City of Providence now acknowledge that they do not possess the largest financial interest and do not oppose the other motions. ECF 46, 52, 54, 58. Only the motions by Duane and Pamela Skrzynski (ECF 19); Oklahoma Police Pension and Retirement System, El Paso Firemen & Policemen Pension Fund, and Teamsters Retirement Pension Plan (collectively, "Pension Funds") (ECF 22); and Steamship Trade Association – International Longshoremen's Association Pension Fund ("STA-ILA") (ECF 27) remain outstanding, and each of these three parties oppose the motions of the others. Thus, the Court addresses only the motions by the Pension Funds, STA-ILA, and the Skrzynskis, which are now fully briefed and ripe for disposition.

## II.    LEGAL STANDARD

Under the PSLRA, the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). There is a rebuttable presumption that the most adequate plaintiff is the person or group of persons that: (1) filed the complaint or made a motion for appointment, (2) "has the largest financial interest in the relief sought by the class," and (3) satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The presumption that the plaintiff who meets the above criteria should be appointed may be rebutted by evidence that she will not fairly and adequately protect

the interests of the class or is subject to unique defenses that will render her unable to represent the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

It is also the responsibility of the lead plaintiff to "select and retain counsel to represent the class" "subject to the approval of the court." *Id.* § 78u-4(a)(3)(B)(i), (v). "[A] district court should approve plaintiff's choice of lead counsel based solely on that counsel's competence, experience, and resources." *In re. Microstrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 438 (E.D. Va. 2000).

## III.    DISCUSSION

Because it is plain that the Skrzynskis, Pension Plans, and STA-ILA have all filed timely motions for appointment, this Court's first task in ascertaining the most adequate plaintiff is to determine which has the largest financial interest in the relief sought by the class. Here, no one disputes that the Skrzynskis have suffered $446,749.16 in LIFO losses, ECF 20-2, the Pension Funds suffered $1,000,760.22 in LIFO losses, and STA-ILA suffered $501,374.37 in LIFO losses. ECF 20-2, 25-2, 29-2. Thus, the Pension Plans would appear to have the largest financial interest by far, but for the Skrzynski's and STA-ILA's challenges to the Pension Plans' aggregation of losses. *See, e.g., Foley v. Transocean Ltd.*, 272 F.R.D. 126, 128 (loss amount is the most-emphasized factor in the *Lax* test). However, the Skrzynskis claim that the Pension Funds are not a proper "group of persons" under the PSLRA because its members are not cohesive but "strangers lacking a pre-existing relationship" and the group is merely lawyer-driven and intended to engineer a group with the largest financial interest, ECF 60 at 6-10, and STA-ILA further insists that the Pension Funds seek to appoint too many attorneys under their proposed two co-lead plus one liaison counsel structure. ECF 53 at 9, 10.

Indeed, the Pension Funds can only have the largest financial interest if its members Oklahoma Police ($484,178.65 loss, ECF 25-2), El Paso ($306,078.68 loss, *id.*), and Teamsters

($210,502.89 loss, *id.*) are aggregated.[1] Aggregation is not *per se* impermissible: the PSLRA permits a "person or group of persons" to be appointed lead plaintiff, 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I), and no pre-existing relationship between the parties to be aggregated is necessarily required. *Varghese v. China Shenghuo Pharmaceutical Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008). Nor does a proposed group need to contain the plaintiff who suffered the single largest loss. *Flannery v. SnowFlake Inc.*, 2024 WL 4008764, at *3 (N.D. Cal. Aug. 29, 2024). Rather, the Court takes a flexible approach in determining whether aggregation is appropriate, focusing on whether grouping "would best serve the class" because the unrelated group members would "be able to function cohesively and [] effectively manage the litigation apart from their lawyers." *Id.* (relevant factors include evidence of pre-existing relationship, involvement of group members in the litigation so far, plans for cooperation, sophistication of members, and whether members chose outside counsel); *see, e.g., MicroStrategy*, 110 F. Supp. 2d at 435 (relevant factors include description of the group's members, including any pre-existing relationships, an explanation of how its members would function collectively, and a description of the mechanism that its members and proposed lead counsel have established to communicate with one another about the litigation). The Court's fundamental concern is with whether allowing aggregation would undermine the PSLRA's intent to protect investors by vesting control of the litigation in the lead plaintiff rather than allow it to be an excessively lawyer-driven and controlled enterprise. *Operating Eng'rs Constr. Indus. & Miscellaneous Pension Fund v. Neogen Corp.*, 2025 WL 3485192, at *2 (W.D. Mich. Dec. 3, 2025).

Under these principles, the Court finds that aggregation is appropriate for the Pension Funds. In support, the Pension Funds have submitted a joint declaration stating the following:

---

[1] At the very least, none of the members of the Pension Funds moved for individual appointment.

- Each member of the Pension Funds is a sophisticated institutional investor with hundreds of millions to billions of dollars of assets under management. ECF 25-4 ¶¶ 2–7.

- Each member was notified of their losses in connection with this action and ongoing investigations into the matter by Labaton and Saxena White. *Id*. ¶ 8. Each member independently determined to seek appointment as lead plaintiff. *Id*. Oklahoma Police selected Saxena White as counsel, and El Paso and Teamsters selected Labaton as counsel, after each undertaking a competitive evaluation process of several law firms and their processes and strategies for prosecuting this litigation. *Id*. ¶¶ 8–10.

- Each member independently resolved to seek joint appointment as lead plaintiff after reviewing counsels' investigations, their investments, their ability to share and combine resources and perspectives as fiduciaries, and their shared goals in protecting and maximizing their investor assets. *Id*. ¶ 11.

- Each member has successfully served as lead plaintiff or in a lead plaintiff group alongside other institutional investors. *Id*. ¶ 12. El Paso has experience serving as lead plaintiff alongside Oklahoma Firefighters Pension and Retirement System, which is a pension fund also represented by Oklahoma Police's legal advisor Marc Edwards. *Id*. ¶ 5; *see Mulquin v. Nektar Therapeutics*, 2019 WL 1170774, at \*4 (N.D. Cal. March 13, 2019).

- On January 12, 2026, the Pension Funds discussed matters such as procedures and mechanisms for communication and decision-making to ensure that the proposed class benefits from their supervision of counsel. ECF 25-4 ¶ 15.

- The Pension Funds resolve to exercise joint decision making and to work together in the litigation to monitor counsel to ensure that litigation is prosecuted in the class's best interest, including by establishing communication and conference procedures with and without counsel, requiring counsel to provide drafts of major filings for the Pension Funds' review at least seven days prior to submission, and requiring counsel to advise the Pension Funds over developments in the litigation. *Id*. ¶¶ 16, 17.

- The Pension Funds do not believe that any unresolvable disagreements between them will arise and will work together to overcome any disputes. *Id*. ¶ 18.

The Court is satisfied that the foregoing establishes that the Pension Funds are a cohesive group that will effectively control this litigation, as consistent with similar declarations relied upon by peer courts in this Circuit appointing lead plaintiff groups. *See, e.g., Klugmann v. Am. Capital Ltd.*, 2009 WL 2499521, at \*5 (D. Md. Aug. 13, 2009); *Palm Tran, Inc. – Amalgamated Transit Union Loc. 1577 Pension Plan v. Emergent Biosolutions, Inc.*, 2021 WL 6072812, at \*5 (D. Md.

Dec. 23, 2021); *Tchatchou v. India Globalization Capital, Inc.*, 2019 WL 1004591, at *7, 8 (D. Md. Feb. 28, 2019); *see also Michiana Area Elect. Workers' Pension Fund v. Inari Med. Inc.*, 2025 WL 936572, at *2, 3 (S.D.N.Y. March 27, 2025). The Pension Funds have adequately described themselves, their collective functioning, and their methods of communication and coordination. They are also a small group of just three members, and they are all sophisticated institutional investors, whom the PSLRA encourages as lead plaintiffs as "the best way to prevent lawyer-driven litigation." *Michiana*, 2025 WL 936572, at *3; *see In re E.Spire Comm'ncs Inc. Securities Litigation*, 231 F.R.D. 207 (D. Md. 2000) (rejecting aggregation of group of eighteen individual investors). Although the Pension Funds do not have direct prior litigation experience with one another, the Court also gives some credit to the fact that El Paso has previously litigated alongside a fund related to Oklahoma Police represented by the same legal advisor (with lead counsel Labaton), and that the Pension Funds have experience serving as lead plaintiff and prior relationships with proposed co-lead counsel Saxena White and Labaton. *Emergent Biosolutions*, 2021 WL 6072812, at *5; ECF 25-4 ¶¶ 3, 5, 6, 12.

The Skrzynskis and STA-ILA's argument that the Pension Funds' proposed co-lead counsel plus liaison counsel structure is both wasteful and suggestive of disagreement and a lawyer-driven arrangement does not undermine the conclusion that the Pension Funds are cohesive and well-positioned to litigate this matter. For one, because securities class actions typically proceed on contingency and because attorneys' fees under the PSLRA are limited to a "reasonable percentage" of the recovery achieved and subject to court approval in class actions, "[t]his reality clearly operates as a disincentive for [co-lead] counsel to engage in unnecessary or duplicative work." *City of Hollywood Firefighters' Pension Fund v. ASML Holding N.V.*, 2025 WL 743986, at *4 n.6 (S.D.N.Y. March 6, 2025); *In re Donnkenny Inc. Securities Litigation*, 171 F.R.D. 156,

158 (S.D.N.Y. 1997) ("the use of co-lead counsel does not in any way increase attorneys' fees and expenses"); 15 U.S.C. § 78u-4(a)(6); Fed. R. Civ. P. 23(e); ECF 25-4 ¶ 20. Additionally, the Pension Funds have explained that the selection of co-lead counsel would allow the class to benefit from each firm's ongoing proprietary investigation into this matter. ECF 25-4 ¶ 19. That the Pension Funds propose two co-lead counsel and liaison counsel is not seriously indicative of lack of cohesiveness for failure to agree where both the membership of the Pension Funds and their proposed counsel is very limited in number. *Cf. E.Spire*, 231 F.R.D. at 214 (recognizing retention of two law firms as undermining cohesiveness where group of five unrelated individual investors sought appointment as lead counsel); *In re Telxon*, 67 F. Supp. 2d 803, 817 (N.D. Ohio 1999) (rejecting appointment of eighteen unrelated individual investors as lead plaintiff, noting that proposed use of three co-lead counsel, executive committee of seven other firms, and one additional firm as liaison counsel was not conducive to coherent representation); *In re Able Laboratories Securities Litigation*, 425 F. Supp. 2d 562, 569 n.10 (D. N.J. 2006) (citing *Telxon*, 67 F. Supp. 2d at 805, 810, 815-16) (contrasting *Telxon*, appointing two institutional investors and two co-lead counsel). Indeed, it is not uncommon for courts in this district to appoint co-lead counsel and liaison or local counsel like that which the Pension Funds propose. *See* ECF 71 at 12 n.8.

For these reasons, it is clear that the Pension Plans have the largest financial interest in the relief sought by the class. The next question is whether they satisfy the requirements of Rule 23, specifically whether their claims or defenses are typical of those of the class, and whether they will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(3), (4); *Microstrategy*, 110 F. Supp. 2d at 435. On this, the Skryzinskis make two arguments: the Pension Funds are not adequate or typical or aligned with class interests because Oklahoma Police is subject to a unique

defense based on reliance because it purchased its shares on October 21, 2025 after the first alleged partial corrective disclosure (September 14, 2025 report on Gallup-McKinley suit filing), and because one court previously found that El Paso lacked the power to sue or be sued and thus lacked standing to act as lead plaintiff. ECF 60 at 10-13. These arguments fail.

Regarding Oklahoma Police, the majority approach holds that "post-disclosure purchases will not destroy a lead plaintiff's typicality unless they threaten to become the focus of the litigation," which the Skrzynskis have not meaningfully explained is the case in this matter. *In re Computer Sciences Corp. Securities Litigation*, 288 F.R.D. 112, 124 (E.D. Va. 2012) (Ellis, J.). To the contrary, the Complaint's allegations of artificial inflation of Stride's stock price by Defendants' omission or misrepresentation of material facts persisted through the October 28, 2025, earnings call, which fully "revealed the extent of [their] impact." ECF 71 at 13, 14 (citing Complaint ¶¶ 27-29, 32-33). Indeed, the first partial disclosure resulted in a relatively modest 11.7% drop in share price, while the final disclosure led to a much larger additional 54% drop, Complaint ¶¶ 31, 33—where the market "reacted quite modestly" to the earlier partial disclosure[]," "the sharp drop in [Stride's] share price after the [final] disclosure confirms the conclusion that the prior disclosure[] had not cured any of [Defendants'] early misrepresentations, and further, that not only [Oklahoma Police], but the entire market had continued to rely on [Defendants' misrepresentations] until the [final corrective] disclosure." *In re BearingPoint Inc. Securities Litigation*, 232 F.R.D. 534, 540 (E.D. Va. 2006) (Ellis, J.). Furthermore, "post-disclosure purchases are consistent with the fraud-on-the market theory and may be entirely rational and indeed a sound investment where the stock is traded in an efficient market." *Computer Sciences Corp.*, 288 F.R.D. at 124. It is also relevant that there are no other badges of non-reliance, Oklahoma Police's losses do not account for the majority of the Pension Funds' losses, neither El

Paso nor Teamsters made any substantial purchases between September 14, 2025 and October 28, 2025, ECF 25-2, and that the Skrzynskis do not argue that no other class members made post-first disclosure purchases. In fact, the Skrzynskis made the vast majority of their stock purchases on the same day that Oklahoma Police did and on the date of the final corrective disclosure, ECF 20-2, so if the Skrzynskis' argument held any water, it would compel that they too be disqualified from appointment as lead plaintiff. The Court rejects the notion that Oklahoma Police are subject to a unique defense such that the Pension Funds are atypical or inadequate.

As to El Paso, the Skrzynskis' argument that it lacks standing is nothing more than incognizable speculation and not proof of inadequacy or a unique defense. *Lemm v. N.Y. Community Bancorp, Inc.*, 744 F. Supp. 3d 107, 116 (E.D.N.Y. 2024); *OFI Risk Arbitrages v. Coopeer Tire & Rubber Co.*, 63 F. Supp. 3d 294, 403 (D. Del. Aug. 6, 2014). The Skryznskis accurately observe that the district court in *In re Stone Energy Corp. Securities Litigation*, 2009 WL 528415 (W.D. La. Feb 27, 2009) found that El Paso lacked the power to sue or be sued under the Texas enabling statute under which it was created. *Id.* at *6. But it is also true that in *Vaitkuviene v. Syneos Health, Inc.*, 2020 WL 5742714, at *1 n.1 (E.D.N.C. Aug. 7, 2020), the magistrate judge recommended a finding that El Paso had standing to serve as lead plaintiff in a securities class action after reviewing El Paso's arguments that it was conferred authority to bring suit by other Texas laws—a recommendation that was not contested and was adopted by the district judge. ECF 71-5; 2021 WL 3856452 at *2 n.1 (E.D.N.C. Aug. 30, 2021). And, as the Pension Funds note, El Paso has been appointed lead plaintiff and class representative numerous times since *Stone Energy*. ECF 71 at 19, 20. In light of *Vaitkuviene*, El Paso's established track record of litigation, and the fact that the Skrzynskis have offered no substantive argument of their own

against El Paso's standing, the Court does not agree that there is proof that it is subject to a unique defense.

The Pension Funds' claims are otherwise typical because they purchased Stride securities during the class period, at prices that the Defendants allegedly inflated with false and misleading statements, and suffered damages "when the truth as disclosed." ECF 22 at 6, 7. The Pension Funds are otherwise adequate. An adequate representative "(i) does not have interests that are adverse to the interest of the class, (ii) has retained competent counsel, and (iii) is otherwise competent to serve as class representative." *Microstrategy* 110 F. Supp. 2d at 435-436. The Pension Funds do not appear to have any interests adverse to the class, and their selected counsel, who have litigated numerous securities class actions, are sufficiently competent to manage this litigation. And the Pension Funds appear in other respects competent to represent the class.

The Court need not address the competing motions of STA-ILA and the Skrzynskis further, as in any case, neither has the largest financial interest in this litigation.

Thus, in light of all of the foregoing, the Court finds that the Pension Funds are the presumptive most adequate plaintiff. This presumption has not been rebutted by any party. Accordingly, the Pension Funds are appointed lead plaintiffs in this matter.

Moreover, the Court shall approve Plaintiff's selection of counsel "based solely on that counsel's competence, experience, and resources." *Microstrategy*, 110 F. Supp. 2d at 439. The Court is satisfied based on the Pension Funds' motion and exhibits that their co-counsel and liaison counsel are sufficiently "competent and experienced . . . and that both have the resources to serve effectively as co-lead counsel." *Id.* at 440. The Court therefore appoints Labaton and Saxena White as lead counsel and Cohen Milstein as liaison counsel for the class.

## IV.    CONCLUSION

For the foregoing reasons, the Court appoints the Pension Funds as lead plaintiff, Labaton and Saxena White as co-lead counsel, and Cohen Milstein as liaison counsel for the class, and it is

**ORDERED** that Oklahoma Police Pension and Retirement System, El Paso Firemen & Policemen Pension Fund, and Teamsters Retirement Pension Plan's ("Pension Funds") Motion (ECF 22) is GRANTED; and it is further

**ORDERED** that all other motions for appointment as lead plaintiff (ECF 13, 16, 19, 24, 27, 33, 37) are DENIED.

**IT IS SO ORDERED.**

The Clerk of Court is directed to forward a copy of this Order to counsel of record.

/s/

Michael S. Nachmanoff

United States District Judge

Michael S. Nachmanoff
United States District Judge

February 9, 2026.
Alexandria, Virginia

12